No. 85-321

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

FRANK A. GUNNIP, Receiver of
McDonald & Eide, Inc., a corp.,
GENE HUNTLEY and ROBERT P. SCHWINN,

        Plaintiffs and Appellants,

-vs-

CONTINENTAL OIL COMPANY, a corp.,
and SHELL OIL COMPANY, a corp.,

        Defendants and Respondents.

---

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Fallon,
The Honorable Nat Allen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Huntley & Eakin; Gene Huntley argued, Baker, Montana

    For Respondent:

        Moulton, Bellingham, Longo & Mather; William
        Bellingham, Billings, Montana  (Shell Oil)
        Ms. E.V. Gross argued for Shell Oil, Houston, Texas
        Crowley Law Firm; Carolyn Ostby argued for Continental
        Oil, Billings, Montana

---

        Submitted:  May 13, 1986

          Decided:  September 9, 1986

Filed:  SEP 9 - 1986

*Ethel M. Harrison*

_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Plaintiffs appeal the April 25, 1985, order of the Sixteenth Judicial District Court granting summary judgment in favor of defendants. We reverse and remand.

This action was brought by plaintiffs to secure an additional 1/8 of the proceeds from a producing oil well in Fallon County, Montana. The lease (Lease) in dispute covers the NW¼ of Section 8, Township 7 North, Range 60 East, and has been the subject of litigation twice previously. A brief history of the chain of title is in order.

Prior to July 1955, McDonald & Eide, Incorporated (M & E) owned the entire working interest in the Lease. At all times, the Lease has been subject to a 12.5% landowner royalty and a 3% overriding royalty; these royalty interests are not in dispute. On July 12, 1955, M & E assigned 100 percent of its interest in the S½ of the NW¼ and 50 percent of its interest in the N½ of the NW¼ to H. W. McDonald. McDonald did not record this assignment until May 15, 1963.

On January 22, 1958, M & E's corporate charter was repealed for failure to pay taxes. Under Delaware law, the corporation had three years to wind up its business. On June 1, 1961, corporate officers of M & E purported to assign M & E's total working interest in the Lease to Vernon Eide and Jacob Von DeLinde. This assignment conflicted with the one previously made to McDonald.

Shortly thereafter, Continental Oil Company (Continental) began negotiations with Eide & Von DeLinde to purchase the Lease. Recognizing that McDonald had filed a quiet title action against Eide and Von DeLinde concerning the Lease, Continental sought McDonald's participation in the deal. On May 22, 1962, Eide & Von DeLinde assigned an undivided ½

2

interest in the Lease to Continental. On May 24, 1962, McDonald signed an agreement ratifying the assignment from Eide & Von DeLinde to Continental of an undivided ½ interest in the Lease. The ratification agreement provided in part,

> . . . the undersigned, H. W. McDonald, does hereby ratify, adopt and confirm said assignment, in all things with the same force and effect as if the undersigned had been named the assignor therein and had duly executed and delivered said assignment to Continental Oil Company.
>
> For the same consideration, the undersigned does hereby transfer, assign, set over and convey unto Continental Oil Company an undivided one-half (½) interest in the oil and gas lease above described . . .

On March 20, 1964, while McDonald's quiet title action was still pending, McDonald made the following assignments: to Gene Huntley 50 percent of his interest in the S½ of the NW¼ and an undivided 50 percent interest in the N½ of the NW¼; to Donald Iverson 25 percent of his interest in the S½ of the NW¼ and an undivided 25 percent interest in the N½ of the NW¼; to Alvin Larson 25 percent of his interest in the S½ of the NW¼ and an undivided 25 percent interest in the N½ of the NW¼. Each of these assignments included a provision that the intent of the assignment was to convey to the assignee the respective share of moneys "held in suspense by Continental Oil Company."

On June 16, 1964, final judgment no. 3679 was entered in McDonald's quiet title action against M & E, Eide, Von DeLinde and Continental. The judgment quieted title in the Lease in McDonald to the extent of 50% of the N½ of the NW¼ and all of the S½ of the NW¼, yet held McDonald's interest subject to the ratification agreement with Continental. The interests of Huntley, Iverson, and Larson were not addressed by the judgment.

On May 28, 1965, the stockholders of M & E appointed Frank Gunnip as receiver for M & E. On February 23, 1967, Gunnip sued M & E and its corporate officers to recover the Lease and other property. Findings of fact and conclusions of law were entered by the trial judge on December 21, 1970, ruling that the conveyance in 1961 of the Lease from M & E to Eide and Von DeLinde was voided in its entirety. Final judgment was delayed for several years due to interim proceedings providing for payment to parties who had developed the Lease. On January 7, 1976, final judgment no. 4062 was entered, providing that Gunnip was owner of a one-half interest in the N½ of the NW¼; defendants Eide, Von DeLinde and Continental were held to have no interest in the Lease.

Shell Oil Company, responsible for disbursing the proceeds from the Lease, continued to pay Continental ½ of the proceeds based upon Continental's assertions that it was entitled to that fraction. Continental continued to claim a 50 percent interest under the ratification agreement with McDonald. Although judgment no. 4062 held that Gunnip was owner of a 50 percent interest in the N½ of the NW¼, Shell was paying him an amount equal to a 25 percent interest.

On October 6, 1981, Gunnip assigned a 3.75 percent interest in the N½ of the NW¼ to Huntley, and a 2.5 percent interest in the N½ of the NW¼ to Robert Schwinn.

Huntley became aware that Gunnip was not receiving his full share, and following demands for payment, Gunnip, Huntley and Schwinn filed suit requesting an additional 1/8 of the proceeds from the Lease. Following summary judgment motions from both parties, summary judgment was granted in favor of Continental by order dated April 25, 1985.

The sole issue on appeal is whether the District Court erred in granting Continental's motion for summary judgment.

Rule 56(c), M.R.Civ.P. provides that summary judgment shall be granted when the record discloses no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. A review of the record before the District Court in this case reveals fact issues which must be resolved.

Continental asserts it is entitled to a 50% interest in the N½ of the NW¼ of the Lease under the ratification agreement with McDonald. However, Continental admits in its brief that it did not adopt this position at the time the ratification agreement was executed in 1964; prior to the time judgment no. 4062 was entered, Continental derived a 25% interest in the N½ of the NW¼ from the Eide and Von DeLinde conveyance and a 25% interest under the ratification agreement. Judgment no. 4062 voided the conveyance from M & E to Eide and Von DeLinde in its entirety, thereby eliminating the 25% interest Continental claimed under assignment from Eide and Von DeLinde. Following judgment no. 4062, Continental continued to assert a 50% interest under the ratification agreement with McDonald.

There remain unresolved issues of material fact regarding the interest of Continental. Although McDonald conveyed an "undivided one-half interest" in the Lease under the ratification agreement, Continental admits in its brief that it did not treat its 50% interest in the N½ of the NW¼ as being derived solely from McDonald until judgment no. 4062 was entered. In 1964 McDonald assigned undivided interests to Huntley, Iverson, and Larson. Huntley, Iverson and Larson have claimed under this assignment adverse to the interest Continental now claims under the ratification agreement. A trial must be held to assess Continental's interest

5

considering potential application of adverse possession, waiver and estoppel.

The court cannot decide Continental's interest under McDonald's ratification agreement without McDonald's assignees before the court. They must be joined on remand.

Continental's asserted 50% interest in the N½ of the Lease must be tested against the interest of McDonald's assignees and their successors in interest. The order of the District Court awarding summary judgment to Continental is reversed. The matter is remanded for further proceedings in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

_____
Honorable Frank I. Haswell,
Retired Chief Justice, sit-
ting in place of Mr. Justice
L.C. Gulbrandson

6

Justice John C. Sheehy, dissenting:

I dissent.

The bone of contention in this law suit is Continental's argument that it now owns all of McDonald's undivided one half interest in the leasehold as it pertains to the N½ of the NW¼ of Section 8, Twn 7 N, R 60 E, in Fallon County Montana.

I agree that the District Court should be reversed, but it is my view that we should order a summary judgment in this case in favor of Gunnip and his assigns to the effect that Gunnip and his assigns are entitled to 25% of the working interest in the NW¼ Section 8, Twn 7 N, R 60 E.

We should further order a summary judgment to the effect that Continental Oil Company is entitled to 37.5% of the working interest in the said NW¼ of Section 8.

We should further order a summary judgment that the remaining 37.5% of the working interest in the said NW¼ is owned by McDonald and his assigns.

The working interest is 84.5% of 100% of production.

General Observations

None of the parties that are involved in this action owns a fee simple title either to the land or minerals. The quarrel in this lawsuit is about the division of the leasehold interest. The res of the lawsuit is the original lease, which had to be kept in force by the lessees, either by development of an oil and gas well or by the payment of delay rentals. We do not have the terms of the original lease before us. We only know from reference in the instruments that an oil and gas lease to the whole of the N½ of Section 8 (including the NW¼ and the NE¼) was given by

7

William P. Knox, a single man, and Mrs. Marsha Know Orrock and her husband, Robert Orrock, to a Frank H. Becker. Becker apparently assigned the full leasehold interest, subject to the landowners royalty and a 3% overriding royalty to McDonald and Eide, Inc., a corporation, before the commencement of the matters involved this lawsuit.

After Continental drilled, and oil and gas was produced in commercial quantity on the leasehold, the Montana Oil and Gas Commission adopted 160-acre spacing rules for the area. This means that the NW¼ of the section is treated as one spacing unit, and the NE¼ of the section is treated as a separate spacing unit, even though both of these quarter sections were included in the leasehold interest owned by McDonald and Eide, Inc. For the purposes of this lawsuit, we are interested only in the leasehold interests in the NW¼.

Since the spacing unit is 160 acres, a person owning either land or a leasehold interest under the area of the NW¼ is entitled to share in the proceeds from any oil or gas produced in the NW¼ in the proportion that either his landowner's royalty ownership, overriding royalty ownership, or lease ownership bears to 160 surface acres. The denominator is always 160 surface acres.

Facts

The facts in this case must be stated more clearly.

On June 1, 1961, McDonald and Eide, Inc., then the record owner of the leasehold interest, but subject to the landowners royalty and a 3% overriding royalty, ostensibly assigned all of its interest in the oil and gas lease to Vernon M. Eide and Jay Von DeLinde (hereafter Eide and Von DeLinde) in the N½ of Section 8, Twn 7 N, R 60 E. This assignment was recorded and as far as the record title is

concerned, indicated that Eide and Von DeLinde were the successors in interest to all of the interests of McDonald and Eide, Inc., in the oil and gas lease. Thus, Eide and Von DeLinde were the ostensible owners of all of the working interest; in other words after deducting royalty interests, Eide and Von DeLinde were the owners of 84.5% of 100% of the oil and gas rights of the land involved.

However, on July 12, 1955, prior to the ostensible assignment to Eide and Von DeLinde, the corporation McDonald and Eide, Inc., had assigned to H. W. McDonald, a portion of the leasehold interest in the following language:

> . . . all of its right, title and interest of the original lessee and present owner in and to said lease and rights thereunder, insofar as it covers the south half of the north west quarter (S½ and NW¼) of Section 8, Twn 7 N, R 60 E, and 50% of its interest undivided in the north half of the north west quarter (N½ of the NW¼) of Section 8, Twn 7 N, R 60 E, subject also to the 3% overriding royalty reserved . . .

Note that the description in the assignment from the corporation to McDonald related only to the leasehold interest in the NW¼ of the section, and that it was an assignment of an interest in the lease. Under the rules relating to 160-acre spacing units, McDonald thereby became the owner of 120/160, or 75% of the working interest in the whole of the NW¼.

Since McDonald became entitled to 75% of the working interest under the NW¼ of the leasehold, it follows that the assignor, McDonald and Eide, Inc., still held the remaining 25% of the working interest in that quarter section.

H. W. McDonald did not immediately file for record in Fallon County the assignment from McDonald and Eide, Inc., to him of a portion of the leasehold interest.

9

Enter Continental Oil Company in 1962. On February 27, 1962, it entered into a farmout agreement with Eide and Von DeLinde, (as record owners of the whole of the leasehold interest) covering the N½ of Section 8, Twn 7 N, R 60 E, subject to the overriding royalty.

A farmout in the oil business occurs when the holders of the leasehold interest farmout to another the obligation to drill a well. The consideration in this case was 50% of the working interest in the lease.

Under the terms of the farmout agreement with Continental, Eide and Von DeLinde agreed to assign to Continental and "undivided one-half interest in and to the said lease insofar as it covers said lands."

In accordance with the farmout agreement, Eide and Von DeLinde did, on May 22, 1962, make an assignment to Continental Oil Company of "an undivided one-half of that certain oil and gas lease" covering the N½ of the said Section 8. Eide and McDonald further provided:

> Assignee [Continental] agrees to bear and pay an undivided one-half (1½) of the land owner's royalty and of the overriding royalty not in excess of three percent (3%) burdening the above described lease.

Somehow the record before us does not show how Continental Oil learned that H. W. McDonald had an interest in the leasehold. The interest of H. W. McDonald, of course, arose from the aforementioned assignment of July 12, 1955, wherein McDonald and Eide, Inc., had assigned to H. W. McDonald 100% of its leasehold interest in the S½ of the NW¼ of Section 8, and an undivided ½ interest of its leasehold interest in the N½ of the NW¼ of Section 8. Although this assignment was made in 1955, McDonald had not recorded the instrument and did not record it until the 1960's. Thus when

10

Continental did its title work on the farmout from Eide and Von DeLinde, the courthouse records did not indicate the McDonald interest in the leasehold.

On learning of the possible McDonald claim to a portion of leasehold interest, Continental obtained from H. W. McDonald a "Ratification and Adoption of Assignment" in accordance with the assignment that it had already obtained from Eide and Von DeLinde. Such a written instrument was executed by McDonald on May 24, 1962, and by it McDonald ratified and confirmed the Eide and Von DeLinde assignment, and went on to say:

> For the same consideration, the undersigned does hereby transfer, assign, set over and convey onto Continental Oil Company an undivided one-half interest in the oil and gas lease above described and in the leasehold estate created thereby on the same terms and conditions as are set forth in the assignment attached hereto and marked exhibit "A." (Underlines ours.)

Thus, in May of 1962, Continental thought it had covered all the bases. It had a farmout agreement and assignment from Eide and Von DeLinde for a 50% interest in the leasehold for all of the N½ of Section 8, and at the same time it had a ratification and adoption of assignment from McDonald for the same acreage in case it developed that McDonald did in fact own an interest in the leasehold by virtue of an unrecorded instrument. Continental could relax and go ahead with its drilling program, which it did, and after a well was successfully developed, it felt safe enough to enter into an operator's agreement with Eide and Von DeLinde.

The operating agreement was made after the successful well was drilled and was dated September 25, 1962. The parties are Continental Oil Company and Eide and Von DeLinde. The instrument describes that Continental has a 50% interest

11

in the leasehold, and contains the following provision in case of failure of title:

> 20. <u>Failure of title</u>. In the event of the failure or partial failure of title to any interest subject hereto, the loss of any such title or titles <u>shall be borne proportionately</u> in accordance with the respective undivided interests of the parties in the lease title to which fails [sic] and no party shall be liable to any other for the loss of any such title.

The roof fell in for Continental Oil Company, as far as Eide and Von DeLinde are concerned, when the District Court in Fallon County determined on December 18, 1970, that the purported assignment to Eide and Von DeLinde from McDonald and Eide, Inc. (the assignment of June 1, 1961,) was void for several reasons. By virtue of that judgment any claim of Continental to a portion of the working interest through Eide and Von DeLinde failed. The interest in the leasehold that was purportedly held by Eide and Von DeLinde was vested by the District Court judgment in Frank Gunnip, as receiver for the corporation, McDonald and Eide, Inc. Continental holds no lease or instrument of any kind signed by Gunnip, his predecessors, or successors that would now serve to limit Gunnip's interest. The judgment means that Gunnip and his assigns are the sole owners of the working interest in the NE¼ of Section 8. It further means that Gunnip and his assigns are the sole owners of an undivided one-half of the working interest in the N½ of the NW¼ of Section 8. Since Gunnip and his assigns own an undivided one-half of the working interest in the N½ of the NW¼ of the leasehold, his leasehold interest in that tract is 40 surface acres of working interest. The proportion of 40 over 160 equals 25%. Gunnip and his assigns are entitled to that amount of working interest irrespective of any other result in this lawsuit.

12

The remaining interest in the NW¼ is owned by H. W. McDonald and his assigns, but subject to the terms of the ratification and adoption of assignment that McDonald had signed for Continental on May 24, 1962.

After the 1955 assignment from McDonald and Eide, Inc., H. W. McDonald owned all of the working interest in the S½ of the NW¼ of Section 8, and an undivided one-half of the working interest in the N½ of the NW¼ of said section. Continental claims that under the ratification agreement signed with McDonald, it is entitled to 50% of the working interest under the S½, and all of McDonald's working interest in the undivided one-half of the N½ of the quarter section. Because McDonald's interest in the N½ is only an undivided one-half, Continental claims that under its ratification and adoption of assignment agreement with McDonald, it became the owner of 100% of McDonald's interest in the N½ of the quarter section.

The fallacy of Continental's position can be shown in two ways: One, the ratification and assignment signed by McDonald (and by Eide and Von DeLinde) did not constitute nor was it intended to constitute a transfer of the surface acres underlying the lease. Rather it was a transfer of a percentage interest in a leasehold, the lease which is res of this lawsuit, an interest which may be calculated by reference to the surface acres. Two, if Eide and Von DeLinde had in fact a valid ownership of an undivided one-half interest in the N½ of the quarter section, and H. W. McDonald owned the other undivided one-half interest, under Continental's position, Continental would have earned from the two sources 100% of the working interest in the N½ of the

13

quarter section by virtue of its farmout agreement and the assignments. This is absurd.

Giving effect to the intention of the parties, Continental, through the farmout and assignments, could only have earned 50% of the leasehold interest validly held by the parties with whom it contracted. The result is that with respect to the NW¼, Continental owns 50% of the working interest underlying the S½ of the NW¼, and 25% of the underlying leasehold in the N½ of the said quarter section.

Reduced to acreages and percentages, of the 80 surface acres underlying the S½ of the quarter section, Continental owns 40 acres of working interest. Of the 40 surface acres representing an undivided one-half interest in the N½ of the quarter section, Continental owns 20 acres of working interest. It therefore owns a total of 60/160 surface acres in the NW¼ or 37.5% of the working interest.

The interest of H. W. McDonald in the NW¼ is subject to subsequent assignments. Those assignments are of record, and there is no contest before us as to the propriety of those assignments. A further lawsuit is not necessary in order to determine those interests and the remand by this Court to determine those interests is quite unnecessary.

There is no need for further extended litigation in this case. There should be no quarrel about the interests of the assigns under Gunnip, nor of the assigns under McDonald's 37.5% interest. All that should be left for the District Court to do, in my view, would be to require an accounting and make appropriate division of the monies held back and to be earned. I would so order.

_____
Justice

Mr. Justice John C. Harrison:

I join in the dissent of Mr. Justice Sheehy.

_____
Justice

14